UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

CECILIA SALAS LOPEZ,

Petitioner,

v.

CHRISTOPHER CHESTNUT, et al.,

Respondents.

No. 1:26-cv-07911-DC-CKD (HC)

ORDER GRANTING PETITIONER'S PETITION FOR WRIT OF HABEAS CORPUS AND MOTION FOR A TEMPORARY RESTRAINING ORDER

(Doc. Nos. 1, 2, 11)

This matter is before the court on Petitioner's motion for a temporary restraining order (Doc. No. 2), filed in conjunction with her petition for writ of habeas corpus brought under 28 U.S.C. § 2241, challenging her ongoing immigration detention. (Doc. No. 1.) Neither party opposes the court ruling directly on the merits of Petitioner's habeas petition. (Doc. Nos. 7 at 3; 8 at 12.) For the reasons explained below, the court finds that Respondents violated Petitioner's Fifth Amendment right to due process by detaining her without providing her an opportunity to contest the basis for her detention in violation of 8 C.F.R. §§ 241.4 and 241.13. Thus, the court will grant Petitioner's habeas petition and motion for a temporary restraining order and will order her immediate release.

/////

/////

/////

## BACKGROUND

### A. Factual Background

Petitioner Cecilia Salas Lopez is a native and citizen of Mexico. (Doc. No. 1 at ¶ 15.) Petitioner previously entered the United States at an unidentified time. (*Id.* at ¶ 28.) On August 19, 2003, an immigration judge granted Petitioner's request for voluntary departure to Mexico. (*Id.*; Doc. No. 1-2 at 9.) The immigration judge also entered an alternate order of removal to Mexico if Petitioner did not voluntarily exit the United States within thirty days of his order. (Doc. No. 1-2 at 9.) Petitioner appealed the immigration judge's order to the Board of Immigration Appeals, who denied the appeal on July 21, 2004, permitting "Petitioner to voluntarily depart from the United States . . . within 30 days from the date of [that] order." (*Id.* at 10.) The Board of Immigration Appeals further ordered that if Petitioner did not timely depart, she would be "removed as provided in the Immigration Judge's order." (*Id.*)

Petitioner alleges that she voluntarily departed the United States pursuant to that order on November 24, 2004. (Doc. No. 1 at ¶ 29.) To support this allegation, Petitioner attaches a receipt allegedly issued by the United States Consulate General in Guadalajara, Mexico confirming hand delivery of Petitioner's voluntary departure documents on November 24, 2004. (*Id.*; Doc. No. 1-2 at 7.) Respondents nonetheless contend that the "Department of Homeland Security ("DHS") determined that [Petitioner] never departed on the 2004 final [removal] order." (Doc. No. 7 at 1.) Respondents do not address Petitioner's receipt allegedly obtained from the United States Consulate General in Mexico.

Petitioner alleges that she remained in Mexico for more than ten years before reentering the United States on January 15, 2015. (Doc. No. 1 at ¶ 31.) Petitioner alleges that she presented herself at the pedestrian port of entry at San Ysidro, but that the inspecting officer waived her through without questioning her or asking for her documents. (*Id.*) Petitioner argues that her entry constitutes an admission within the meaning of the Immigration and Nationality Act. (*Id.*) (citing *Matter of Quilantan*, 25 I. & N. Dec. 285 (BIA 2010)).

Petitioner has pursued lawful permanent residence in the United States following her most recent entry. (*Id.* at ¶ 32.) Specifically, on July 9, 2025, Petitioner and her son filed a Form I-130,

Petition for Alien Relative, and a concurrent Form I-485, Application to Register Permanent Residence or Adjust Status. (*Id.*) On September 22, 2025, U.S. Citizenship and Immigration Services ("USCIS") denied her Application to Register Permanent Residence or Adjust Status because "an Immigration Judge issued a Voluntary Departure Order on August 19, 2003, but [Petitioner has] not yet departed under that order." (Doc. No. 1-3 at 36.) In May 2026, Petitioner refiled her Form I-485 along with updated supporting documents. (Doc. No. 1 at ¶ 34.) USCIS accepted the application, and Petitioner appeared for biometric appointments related to her application on June 24, 2026, and August 21, 2026. (*Id.*) That application remains pending. (*Id.*)

On September 25, 2026, Petitioner appeared at the USCIS Fresno Field Office for her interview relating to her renewed Form I-485 application. (*Id.* at ¶¶ 36–37.) Petitioner was questioned extensively regarding the years she lived in Mexico following her voluntary departure and her 2015 reentry into the United States. (*Id.* at ¶ 38.) Immediately following that interview, three ICE officers detained Petitioner. (*Id.* at ¶ 39.) Those officers informed Petitioner's daughter that their records indicated Petitioner had never left the United States in violation of her order of voluntary departure. (*Id.*) Petitioner's daughter informed the officers that her mother was in possession of documentation demonstrating that she had, in fact, departed the United States at that time. (*Id.*) The officers responded that they would look into the matter, but that Petitioner would be detained in the meantime. (*Id.*) Petitioner was not given any process to contest her detention before it was effectuated. (*Id.* at ¶ 41.) Petitioner has remained in ICE custody since her detention. (*Id.* at ¶ 42.) She has not received an individualized custody review at any point during her detention. (*Id.*) Petitioner is currently detained at the California City Immigration Processing Center in California City, California. (*Id.* at ¶ 6.)

**B. Procedural Background**

On September 25, 2026, Petitioner filed the pending habeas petition contending that she is detained under 8 U.S.C. § 1226(a) and that she is entitled to an individualized custody redetermination hearing pursuant to that statute. (Doc. No. 1 at 18–19.) Petitioner further contends that she cannot be detained under 8 U.S.C. § 1231(a) because she complied with her prior grant of voluntary departure and remained outside the United States for ten years such that

she is not subject to any valid final order of removal. (*Id.* at 20.) Petitioner argues that her years of living in liberty in the United States with the government's knowledge entitle her to a pre-deprivation bond hearing before she can be detained. (*Id.*) Petitioner asserts three claims for relief: (1) violation of her Fifth Amendment right to procedural due process; (2) violation of her Fifth Amendment right to substantive due process; and (3) violation of her statutory rights under the Immigration and Nationality Act. (*Id.* at 23–24.) Petitioner seeks an order mandating her immediate release and requiring Respondents to provide Petitioner with notice and a pre-deprivation bond hearing before she can be re-detained. (*Id.* at 24–25.) On that same day, Petitioner filed the pending motion for a temporary restraining order seeking her immediate release based on the same grounds as those presented in her habeas petition. (Doc. No. 2.)

On September 30, 2026, Respondents filed an opposition to Petitioner's motion for a temporary restraining order in which they argue that Petitioner is detained pursuant to 8 U.S.C. § 1231(a)(6). (Doc. No. 7 at 2–3.) Specifically, Respondents contend that there is no evidence Petitioner actually left the United States following her voluntary departure order such that the alternate order of removal remains final, valid, and enforceable. (*Id.* at 2.) Respondents further contend that Petitioner's detention is constitutional under *Zadvydas v. Davis*, 533 U.S. 678 (2001), because Petitioner has been detained for less than six months and her removal is imminent. (*Id.* at 3.)

On October 1, 2026, Petitioner filed her reply arguing that the alternate order of removal was executed upon her return to Mexico. (Doc. No. 8 at 2) (citing 8 C.F.R. § 241.7) ("Any alien who has departed from the United States while an order of deportation or removal is outstanding shall be considered to have been deported, excluded and deported, or removed. . . ."). Petitioner further argues that absent an executable order, Petitioner remains detained under § 1226(a) and is entitled to an individualized custody review hearing under that statute. (*Id.* at 3.) Petitioner emphasizes that, to the extent Respondents believe Petitioner unlawfully reentered the United States, they can reinstate her prior order of removal under 8 U.S.C. § 1231(a)(5). (*Id.* at 5.) Absent reinstatement, Petitioner contends Respondents cannot execute the previously executed alternate order of removal. (*Id.* at 6.)

On October 2, 2026, Petitioner filed a motion for an interim order barring her removal while this habeas action is pending. (Doc. No. 9.) Petitioner alleged that she had been moved to ICE custody in El Paso, Texas, where she was informed she would be removed the following day. (*Id.* at 2.) On that same day, the court issued an order enjoining Petitioner's removal pending its ruling on her motion for a temporary restraining order. (Doc. No. 10.)

On October 23, 2026, Petitioner filed a notice of changed circumstances informing the court that her counsel had repeatedly contacted ICE to request her release "on humanitarian grounds, an order of supervision, or alternatives to detention, and to provide her prompt medical follow-up" relating to an illness contracted in ICE detention, but that ICE had not meaningfully responded to those requests. (Doc. No. 11 at 2.)

## LEGAL STANDARD

The Constitution guarantees the availability of the writ of habeas corpus "to every individual detained within the United States." *Hamdi v. Rumsfeld*, 542 U.S. 507, 525 (2004) (citing U.S. Const., Art. I, § 9, cl. 2). "[T]he essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). A writ of habeas corpus may be granted to a petitioner who demonstrates that he is in custody in violation of the Constitution or federal law. 28 U.S.C. § 2241(c)(3). "[T]he 'in custody' provision . . . requires only that a petitioner be incarcerated—or, as here, in INS custody—at the time a habeas petition [was] filed." *Abdala v. I.N.S.*, 488 F.3d 1061, 1064 (9th Cir. 2007). Historically, "the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr.*, 533 U.S. 289, 301 (2001). A district court's habeas jurisdiction includes challenges to immigration detention. *See Zadvydas v. Davis*, 533 U.S. 678 (2001).

## DISCUSSION

### A. Statutory Basis for Detention

The parties dispute the legal authority under which Petitioner is currently detained. In her habeas petition, Petitioner contends that the only statute that authorizes her detention, if any, is 8

U.S.C. § 1226(a), the "default authority for noncitizens arrested and held pending removal proceedings." (Doc. No 1 at 18.) Petitioner contends she is not subject to mandatory detention under 8 U.S.C. § 1231(a) because she "complied with her prior grant of voluntary departure" by departing, documenting her departure with the United States Consulate General in Guadalajara, Mexico, and remaining outside the United States for more than ten years before returning. (*Id.* at 20.)

In their opposition, Respondents contend that DHS "determined that [Petitioner] never departed on the 2004 final order" such that the alternate removal order remains executable. (Doc. No. 7 at 1.) Thus, Respondents argue that Petitioner is detained under 8 U.S.C. § 1231(a)(6), which allows for detention of certain noncitizens beyond the three-month removal period. In her reply, Petitioner again argues that because she left the United States following entry of her alternate order of removal, she is not subject to a final order of removal and cannot be detained under § 1231(a). (Doc. No. 8 at 2) (quoting *Morales-Izquierdo v. Gonzales*, 486 F.3d 484, 487 (9th Cir. 2007) (en banc) ("When an alien subject to removal leaves the country, the removal order is deemed to be executed. If the alien reenters the country illegally, the order may not be executed against him unless it has been 'reinstated' by an authorized official."). Petitioner emphasizes that the "only route Respondents identify that would leave the 2004 order available for [] execution is that Petitioner never departed the United States, and on that question they offer the absence of an entry in their own databases, set against a dated receipt showing that Petitioner was at the United States Consulate General in Guadalajara on November 24, 2004." (*Id.*)

Thus, Petitioner's argument as to why her detention is authorized under § 1226(a) rather than § 1231(a) is that the purported final order of removal upon which Respondents predicate their detention analysis has already been executed and cannot be re-executed absent reinstatement. While the court finds Petitioner's argument and supporting documentation compelling, it lacks jurisdiction to consider whether Petitioner's purported final order of removal remains executable. Specifically, the Immigration and Nationality Act requires that "a petition for review filed with an appropriate court of appeals . . . shall be the sole and exclusive means for judicial review of an order of removal. . . ." 8 U.S.C. § 1252(a)(5); 8 U.S.C. § 1252(b)(2) ("The

petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings."); 8 U.S.C. § 1252(b)(9) ("Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this subchapter shall be available only in judicial review of a final order under this section."). Thus, § 1252 precludes a district court from reviewing challenges to the enforceability of a removal order. *See, e.g., Alvarenga-Torres v. Clark*, No. 10-cv-00079-JLR-JPD, 2010 WL 2595241, at *2 (W.D. Wash. June 3, 2010) ("The REAL ID Act of 2005 amended the judicial review provisions of the Immigration and Nationality Act to explicitly provide that judicial review of all deportation, exclusion, or removal orders lies exclusively in the appropriate court of appeals, and that the district courts no longer have jurisdiction to review such orders."), *report and recommendation adopted by* 2010 WL 2545959 (W.D. Wash. June 23, 2010). Thus, for the purposes of this order the court accepts as true that Petitioner's 2004 removal order remains executable and that her detention is governed under § 1231(a).

This does not, however, end the analysis as Petitioner also asserts due process claims relating to her continued detention. (Doc. No. 1 at 23–24.) While § 1252 strips the court of jurisdiction to review the enforceability of her removal order, and therefore the statutory basis for her detention, it does not strip the court of jurisdiction to consider the constitutionality of her continued detention under that statute. *Alvarenga-Torres*, 2010 WL 2595241, at *3 ("Although the REAL ID Act eliminated district court habeas corpus jurisdiction over orders of removal, 'the REAL ID Act's jurisdiction stripping provisions . . . do[] not apply [if the] claim is not a direct challenge to an order of removal.'") (quoting *Puri v. Gonzales*, 464 F.3d 1038, 1041 (9th Cir. 2005)); *Gonzalez v. United States Immigr. and Customs Enf't*, 975 F.3d 788, 810 (9th Cir. 2020) ("Section 1252(b)(9) is also not a bar to jurisdiction over [the petitioners'] claims because claims challenging the legality of detention pursuant to an immigration detainer are independent of the removal process.").

**B. Due Process**

Petitioner contends that Respondents violated her Fifth Amendment right to procedural

due process by detaining her without any pre-deprivation process. (Doc. No. 1 at 21.) Petitioner emphasizes that she "remained at liberty in the community for years while the government knew her identity and whereabouts" such that "Due Process require[d] notice and a hearing before a neutral decisionmaker before Respondents detained her." (*Id.* at 21–22.) In their opposition, Respondents emphasize that the orders issued by courts in this district, including this court, that require a pre-deprivation bond hearing arose "where DHS re-detained noncitizens pre-final-order under § 1226(a) or while contesting interior § 1225 usage." (Doc. No. 7 at 3.) Thus, Respondents contend those cases are inapplicable to Petitioner's detention under § 1231. (*Id.*)

Indeed, this court has repeatedly held that where the government has knowledge of a noncitizen's allegedly unlawful presence in the United States but does not timely detain the noncitizen for removal proceedings, due process requires that the government provide the noncitizen with a pre-deprivation bond hearing before they may be detained. *See Oliveira Tinoco v. Albarran*, No. 1:26-cv-05505-DC-CKD, 2026 WL 2949219 (E.D. Cal. Oct. 1, 2026) (holding that noncitizen who overstayed her visa was entitled to pre-deprivation bond hearing when she repeatedly applied for immigration relief after expiration of her visa but was not promptly detained); *Antunez-Santos v. Chestnut*, No. 1:26-cv-07587-DC-AC, 2026 WL 3072454 (E.D. Cal. Oct. 14, 2026) (same as to noncitizen detained over two years after expiration of his temporary protected status). However, as Respondents accurately note, the petitioners in those cases were detained under § 1226(a), whereas here Petitioner is presumptively detained under § 1231(a).

Another court in the Ninth Circuit, however, recently considered a substantially similar situation. In *Orellano v. Hernandez*, No. 2:26-cv-01167-LK, 2026 WL 1283520 (W.D. Wash. May 11, 2026), the petitioner was a noncitizen who was ordered removed from the United States on March 4, 2025, but she was not in ICE custody at the time her removal order became final and was not detained until approximately one year later. *Orellano*, 2026 WL 1283520, at *1. The petitioner, like Petitioner in this case, was not provided with any pre-deprivation process. *Id.* After determining that the petitioner was detained pursuant to 8 U.S.C. § 1231(a)(6), the court in *Orellano* concluded that the petitioner was statutorily entitled to the pre-deprivation process provided in 8 C.F.R. §§ 241.4 and 241.13. *Id.* at *4. The court in *Orellano* clarified that those

provisions facially pertain to the "revocation of release of a noncitizen previously released pursuant to 8 U.S.C. § 1231(a)(6)" but that the government "opted not to detain [the petitioner] for roughly a year after her removal order became final" such that there was no explicit revocation of release. *Id.* However, the court in *Orellano* noted that 8 U.S.C. § 1231(a)(2)(A) mandates that the government "shall detain" the petitioner during the removal period, and the government's decision not to do so constituted an implicit release on supervision following the removal period. *Id.* ("[A]lthough ICE did not formally designate [the petitioner] as being on supervised release under Section 1231(a)(3) and (a)(6), her release thereunder was necessarily implied by Respondents' discretionary decision to keep her on release after the removal period, and the implementing regulations provide the process required under the statute to revoke that release."). The court further found that the government's failure to comply with the pre-deprivation procedures provided in §§ 241.4 and 241.13 constituted a violation of the petitioner's procedural right to due process because "[t]he procedures set forth in both 8 C.F.R. § 241.4 and 8 C.F.R. § 241.13 are intended to provide noncitizens with fundamental due process protections that courts have found to be constitutionally required." *Id.* at *6 (quoting *Hall v. Nessinger*, No. 25-cv-00667-JJM-PAS, 2026 WL 18583, at *4 (D.R.I. Jan. 2, 2026)). Thus, because the government failed to abide by the procedural protections of §§ 241.4 and 241.13, the court in *Orellano* ordered the petitioner's immediate release. *Id.* at *7.

Here, under Respondents' interpretation of Petitioner's relevant immigration history, Petitioner's removal order became final on or about August 20, 2004, after she failed to voluntarily depart the United States and her alternate order of removal was entered. (Doc. No. 1-2 at 10.) Respondents failed to detain Petitioner during the ninety-day removal period following entry of her order of removal; therefore as in *Orellano*, Petitioner has been on an implied supervised release for the 22 years that Respondents alleged Petitioner has remained in the United States. That Respondents acquiesced to this implied release is confirmed by their failure to take any action to detain Petitioner upon her application for immigration relief in June 2025, or her multiple appearances in furtherance of that application in 2025 and early-2026. (Doc. No. 1 at ¶¶ 32–34.) Further, the risk of erroneous deprivation of Petitioner's liberty interest in her continued

freedom is particularly egregious here, where Petitioner's family repeatedly emphasized to the arresting ICE officers that Petitioner was in possession of documentation showing that Petitioner *had* departed the United States in 2004, thereby nullifying the final order of removal upon which she was allegedly being detained, yet those officers merely informed Petitioner's family that they would look into the issue at a later date and detained Petitioner in the meantime. (*Id.* at ¶ 39.) This sort of post-deprivation consideration of evidence suggesting detention is not proper in the first place is precisely the situation that pre-deprivation process is intended to avoid. *Oliveira Tinoco*, 2026 WL 2949219, at *6 ("A pre-deprivation hearing enables a noncitizen to retain their full liberty prior to a hearing, and moreover, it is precisely that liberty that provides the noncitizen full access to their resources and independence which may be crucial to preparing an adequate defense for the hearing.").

Thus, the court finds that Petitioner is entitled to the procedural protections provided in 8 C.F.R. §§ 241.13 and 241.4 before she can be re-detained, and that Respondents violated Petitioner's right to procedural due process by detaining her without complying with those procedures. Accordingly, the court will grant Petitioner's habeas petition and motion for a temporary restraining order.[1]

**CONCLUSION**

For the reasons set forth above,

1. Petitioner's motion for a temporary restraining order (Doc. No. 2) and petition for writ of habeas corpus (Doc. No. 1) are GRANTED as follows;

---

[1] Although not raised in Petitioner's petition, the court further notes that many courts in the Ninth Circuit and beyond have found that it is unlawful to detain a noncitizen at an appointment scheduled for the noncitizen's lawful pursuit of immigration relief. *See Franco v. Meyer*, No. 1:25-cv-01620-DAD-CKD, 2025 WL 3280782, at *2 (E.D. Cal. Nov. 25, 2025) (ordering immediate release of noncitizen detained at adjustment of status interview); *You, Xiu Qing v. Nielsen*, 321 F. Supp. 3d 451, 464–65 (S.D.N.Y. 2018) ("[T]he Court concludes that Congress could not have intended its silence on the interplay between adjustment [of status] and removal to permit ICE to exploit the former in service of the latter. Accordingly, Petitioner has demonstrated that his arrest at USCIS's offices and his detention pursuant to that arrest likely violated the INA."). Thus, while not briefed by the parties, it is likely that Petitioner's arrest was also unlawful by virtue of having been effectuated during Petitioner's appearance for an adjustment of status interview.

a. Respondents shall immediately release Petitioner Cecilia Salas Lopez[2] (A-079-578-075) from their custody;

b. Upon her release, Respondents shall not impose any additional restrictions on Petitioner, such as electronic monitoring, unless that is determined to be necessary at a future custody hearing;

c. Respondents shall RETURN all of Petitioner's documents and possessions upon her release from custody;

d. Respondents are enjoined and restrained from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, which include, at a minimum, strict compliance with the requirements of 8 C.F.R. §§ 241.4 and 241.13;

2. Petitioner's notice of changed circumstances and request to supplement the record (Doc. No. 11) is DENIED as having been rendered moot by this order;

3. The Clerk of the Court is directed to serve a copy of this order on the California City Detention Facility; and

4. The Clerk of the Court is directed to enter judgment for Petitioner and close this case.

IT IS SO ORDERED.

Dated: **October 28, 2026**

Dena Coggins
United States District Judge

---

[2] The court notes that Petitioner's immigration records also reflect her name as Cecilia Salas De Rodriguez. (Doc. No. 7-1 at 1.)